IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARYAN GILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-791-NJR-DGW |
| ) | |
| ARTHUR FUNK, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on Plaintiff's Motion for Preliminary Injunction (Doc. 90). For the reasons set forth below, it is **RECOMMENDED** that the Motion be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

FINDINGS OF FACT

Plaintiff Jaryan Gills is an inmate in the custody of the Illinois Department of Corrections ("IDOC") currently incarcerated at Stateville Correctional Center ("Stateville"). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging that prison officials and medical personnel at Stateville, as well as Menard Correctional Center and Lawrence Correctional Center, have failed to adequately treat his inguinal hernia and four bullet fragments lodged in his body since his incarceration began in 2011.

On March 26, 2015, Plaintiff filed a motion for preliminary injunction (Doc. 90) asking the

Court to order Defendants to send him to an outside specialist for surgery to repair his inguinal hernia and remove the bullet fragments from his body. In his motion, Plaintiff avers that he is in chronic, significant pain and his daily activities are severely restricted due to the medical conditions complained of in this lawsuit. Plaintiff further complains that he has received only over-the-counter pain medication sporadically and has been forced to reside on upper galleries and bunks, which has exacerbated his medical conditions. In support of his motion for preliminary injunction Plaintiff filed a Declaration (Doc. 91) specifying the efforts he has taken to notify various officials of the inadequate medical care he has been receiving and arguing that Wexford Health Sources, Inc. ("Wexford") and the IDOC have a practice and/or policy of denying inmates surgical procedures due to cost considerations. Plaintiff also included various requests for relief in his declaration, asking the Court to: (1) grant him preliminary injunctive relief "in the form of surgical treatment"; (2) enter an order "stoping defendants 'summary judgment' against Plaintiff, if any"; (3) "award Plaintiff judgment he seeks in original complaint"; (4) award Plaintiff compensatory damages in an amount no less than $250,000 for pain and suffering; and (5) award Plaintiff punitive damages in an amount no less than $250,000 to deter Defendants from engaging in such conduct in the future. As Defendants have not filed a motion for summary judgment, such a request is improper at this time. Plaintiff's request for money damages is also improper at this stage in the proceedings as the only relief that can be granted by way of Plaintiff's motion currently before the Court is preliminary *injunctive* relief.

On April 6, 2015, Defendants Nikki Malley, Richard Harrington, Michael Atchison, Debbie Denning, S.A. Godinez, Louis Shicker, Pam Grubman, Jaclyn O'Day, and Charles Fasano ("IDOC Defendants") filed their response to Plaintiff's motion for preliminary injunction (Doc.

94). The IDOC Defendants argue that Plaintiff's motion should be denied because he has not shown he is likely to prevail at trial, he is not likely to suffer irreparable harm, and the balance of harm weighs in the IDOC Defendants' favor as they do not work at Stateville and do not have the necessary authorization to transfer Plaintiff to any location to carry out the requested relief. Defendants further contend that Plaintiff's complaints of constant pain are not reliable, as he often refuses his sick call requests to go to the yard and does not use his prescribed medical equipment.

Defendants Wexford, Dr. Arthur Funk, Dr. Samuel Nwaobasi, Dr. Robert Shearing, Dr. John Shepard, Dr. Fe Fuentes, and Dr. John Coe ("Wexford Defendants") also filed their response to Plaintiff's motion for preliminary injunction on April 6, 2015 (Doc. 93). The Wexford Defendants contend that Plaintiff is not likely to succeed on the merits of his claim as he has received regular and appropriate treatment for his inguinal hernia and bullet fragments. In support of this contention, Defendants submitted Plaintiff's medical records detailing the care he has received since approximately March, 2011 (*See* Docs. 93-2 and 93-3). Defendants further contend that Plaintiff has an adequate remedy at law and will not suffer irreparable harm absent preliminary relief, the "balance of equities" is in their favor, and the provision of preliminary relief is not in the public interest.

*Plaintiff's Medical Records*

As Plaintiff's complaint and his request for preliminary injunctive relief relate to his medical care, and complaints thereof, the Court finds it instructive to detail the medical care Plaintiff has received for his inguinal hernia and lodged bullet fragments while in the custody of the IDOC.

Plaintiff's left inguinal hernia was first examined by a physician at Lawrence on April 29,

2011 (Doc. 93-2, Plaintiff's Medical Records, p. 10; Doc. 93-1, Affidavit of John Coe, M.D., ¶ 6). It was noted that Plaintiff was not experiencing any pain at that time and the hernia was found to be easily reducible and not strangulated (*Id.*). From April, 2011 to May, 2013, Plaintiff's hernia was regularly examined by various medical personnel (*see, e.g.*, Doc. 93-2, pp. 17, 21-23, 28-31, 33, 37, 37, 40, 42-43, 47, Doc. 93-3, pp. 8-9, 11). Plaintiff's hernia was consistently described as "reducible" and he was typically provided with a prescription for pain reliever and advised to avoid strenuous exercise (*see id.*). On May 10, 2013, Plaintiff indicated that his hernia no longer stayed in his body cavity when he pushed it in; rather, Plaintiff explained that his hernia comes "right back out" once he tries to push it in (Doc. 93-3, p. 8). Accordingly, Plaintiff was referred to, and subsequently examined by, a physician on May 12, 2013 who determined that Plaintiff's inguinal hernia was reducible (*Id.* at 9). Plaintiff was referred for a hernia belt to provide support for his condition, which was issued on July 2, 2013 (*Id.* at 9-10, 12). On July 23 and September 4, 2013, Plaintiff refused nurse sick call for treatment and/or evaluation of his hernia pain (*Id.* at pp. 44-45). Plaintiff continued to seek medical treatment for his complaints of pain related to his hernia and was regularly examined by medical personnel (*see, e.g.,* Doc. 93-3, pp. 19, 29-30). During these examinations Plaintiff's hernia was described as "reducible" (*Id.*). Upon his transfer to Stateville, where Plaintiff is currently incarcerated, his left hernia was documented and he was examined on February 7, 2015 (Doc. 93-3, pp. 32, 34). Plaintiff was subsequently scheduled to see a physician for his hernia on February 18, 2015; however, Plaintiff did not show up for his appointment (*Id.* at 36). Plaintiff's hernia was examined by Dr. Obaisi on May 4, 2015 and was found to be reducible (Doc. 106, Plaintiff's Supplemental Medical Records, p. 2). Plaintiff was prescribed 400 milligrams of Motrin for 30 days and instructed to wear his hernia belt during the

day time, as he had only been wearing his belt at night (*Id.* at 3). Dr. Obaisi referred Plaintiff to collegial review requesting a surgical evaluation that was approved on May 13, 2015 (*Id.* at 7). The Court is unaware if the surgical evaluation has been carried out or remains pending.

With regard to Plaintiff's complaints about the bullet fragments in his body, it appears that he first complained about the bullet fragments on June 29, 2011 (Doc. 93-2, p. 17). No treatment was prescribed at that time. A review of the medical records indicates that Plaintiff did not complain of the bullet fragments again until May 10, 2013, wherein he explained that they were protruding from the skin (Doc. 93-3, p. 8). The nurse referred Plaintiff to a physician who examined him on May 15, 2013 and found that the bullet fragments were working their way to the surface, but had not broken the skin (*Id.* at 11). The bullet fragments were again assessed by a physician at Stateville on May 4, 2015 who noted that they were causing itching; however, the physician did not indicate that any treatment was necessary to address the lodged fragments (*Id.*).

### *Hearing on Plaintiff's Motion for Preliminary Injunction*

On May 6, 2015, the Court held a hearing on Plaintiff's motion for preliminary injunction wherein Plaintiff testified on his behalf. Plaintiff explained that his hernia has put severe limitations on his daily activities. In particular, Plaintiff averred that his ability to exercise has been significantly limited as he cannot run, jump, or lift weights. Plaintiff further explained that his hernia has made it difficult to sleep as he is often awakened by the pain and he must sleep on his stomach, with his hand holding his hernia down. Plaintiff indicated that any activity that puts a strain on his abdomen or groin area causes him intense pain. With regard to the bullet fragments, Plaintiff explained that he has four fragments lodged in his body, one in his left hand, one in his right thigh, one in his left thigh, and one in his left shin. The bullet fragments became lodged in

his body between 2004 and 2006. Plaintiff averred that the bullet fragments cause him soreness a few times a month and regularly cause him to itch. Plaintiff refutes Defendants contention that he refused sick call or other scheduled appointments or was not in his cell when he was called for such appointments.

At the hearing, Dr. Obaisi, the Medical Director at Stateville, testified on behalf of Defendants. Dr. Obaisi confirmed that Plaintiff suffers from an inguinal hernia that has increased in size over time; however, Dr. Obaisi explained that hernias typically enlarge overtime and an increase in a hernia's size does not indicate that surgery is medically necessary. More specifically, Dr. Obaisi explained that a surgical repair for a hernia is an elective procedure and is only necessary if there are attendant complications, such as incarceration or strangulation. Dr. Obaisi testified that Plaintiff's hernia is not incarcerated, strangulated, or irreducible. Dr. Obaisi explained that Plaintiff is receiving appropriate, conservative treatment for his hernia, including a support belt and Motrin to reduce inflammation. With regard to Plaintiff's bullet fragments, Dr. Obaisi testified that they are superficial and stable and, in his medical opinion, do not need to be surgically removed at this time.

## CONCLUSIONS OF LAW

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating:

1. A reasonable likelihood of success on the merits;
2. No adequate remedy at law; and
3. Irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. of Health*, 699 F.3d 962, 972 (7th Cir. 2012). As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents. The movant's threshold burden, however, is to show the first three factors. *Ping v. Nat'l Educ. Ass'n*, 870 F.2d 1369, 1371 (7th Cir. 1989).

Plaintiff asserts that the medical conditions at issue in this lawsuit require immediate relief as he is enduring significant pain and limitations on his daily activities and his hernia could become a life threatening condition. Although the Court is mindful of the discomfort associated with Plaintiff's hernia and lodged bullet fragments, it finds that Plaintiff has failed to meet his threshold burden for a preliminary injunction. First, it is not clear that Plaintiff will suffer imminent, irreparable harm absent injunctive relief. According to Plaintiff's medical records and the testimony proffered at the hearing, Plaintiff's hernia, although increasing in size, is well-managed with pain relievers and a supporting belt. Moreover, his hernia is not strangulated

or incarcerated, which conditions would require more immediate, intensive treatment. Further, with regard to his bullet fragments, their condition is stable and, although they are causing Plaintiff some discomfort, Plaintiff's complaints do not amount to a finding that he may suffer "irreparable harm." *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for." (quotation marks and citation omitted)).

Further, based on the evidence now before the Court, Plaintiff has not established that he is likely to succeed on the merits of his claim at this time.[1] The underlying case states a claim for deliberate indifference to serious medical needs against the named Defendants. Accordingly, to prevail on his claim, Plaintiff must show that his medical condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). In this case, it is readily apparent that Plaintiff suffers from serious medical conditions, as Plaintiff requires regular treatment and evaluation by medical personnel. *See Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008). However, the evidence in this case does not support a finding that Defendants acted with a sufficiently culpable state of mind—namely, deliberate indifference.

"The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653. Put another way, the plaintiff must demonstrate that the official was "aware of facts from which the inference could be

---

[1] Such a conclusion is not a judgment as to whether Plaintiff may ultimately prevail in this lawsuit.

Page **8** of **10**

drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Greeno*, 414 F.3d at 653. "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Further, the Eighth Amendment does not require that prisoners receive "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care"). The Seventh Circuit has recognized that "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Moreover, the Seventh Circuit recognizes that treatment decisions that necessarily require medical judgment, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) (citation and quotation omitted).

The evidence before the Court establishes that Plaintiff has received regular examination and treatment, albeit conservative treatment, for his hernia and lodged bullet fragments. Although Plaintiff complains of pain and mobility limitations, neither his hernia nor bullet fragments require emergency treatment and his treating physicians have deemed conservative treatment with pain relievers sufficient to manage his complaints. Importantly, the record reflects that Plaintiff was recently referred to an outside specialist for a surgical evaluation. Although Plaintiff is understandably frustrated with his medical condition, the evidence does not support a finding at this time that Defendants have disregarded a substantial risk to his health. Rather, the

evidence tends to support a finding that Plaintiff has received sufficient treatment and, although Plaintiff may require surgery sometime in the future, according to Dr. Obaisi, a physician who has personally treated Plaintiff, surgery is not indicated at this time.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 90) is **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: May 20, 2015**

                                                                                                            *Donald Wilkerson*

                                                                                                            **DONALD G. WILKERSON**
                                                                                                            **United States Magistrate Judge**