IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARYAN GILLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-791-DGW |
| ) | |
| JOHN COE, M.D., WEXFORD HEALTH ) | |
| SOURCES, FE FUENTES, M.D., SAMUEL ) | |
| NWAOBASI, M.D., ROBERT SHEARING, ) | |
| M.D., JOHN SHEPHERD, M.D., and LOUIS ) | |
| SHICKER, M.D., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND OPINION**

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants John Shepherd, M.D., Robert Shearing, M.D., Samuel Nwaobasi, M.D., Fe Fuentes, M.D., John Coe, M.D., and Wexford Health Sources, Inc. on November 21, 2016 (Doc. 223). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

PROCEDURAL BACKGROUND

Plaintiff Jaryan Gills, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), initiated this lawsuit on August 5, 2013 pursuant to 42 U.S.C. §1983 alleging his constitutional rights were violated. Plaintiff's first two complaints (his original complaint and his first amended complaint), were dismissed without prejudice for their failure to state a viable claim against any named defendant (*see* Docs. 7 and 13). At the direction of the Court, Plaintiff filed a second amended complaint that was screened pursuant to 28 U.S.C. § 1915A. In his second amended complaint, Plaintiff alleges that officials at Stateville Correctional Center, Menard

Correctional Center, and Lawrence Correctional Center failed to adequately address his complaints of pain related to his inguinal hernia and bullet fragments lodged in his body. Following the screening of Plaintiff's complaint, he was allowed to proceed on a claim of deliberate indifference against Defendants Arthur Funk, Nikki Malley, Warden Harrington, Warden Atchison, Dr. John Coe, Debbie Denning, Charles Fasano, Dr. Fuentes, S.A. Godinez, Pam Grubman, S. Nwaobasi, Jaclyn O'Day, Reynolds, N. Saneth, Dr. Robert Shearing, J. Shephard, and Louis Shicker (*see* Doc. 16). Plaintiff was also allowed to proceed against Defendant Wexford Health Sources for allegedly implementing policies and practices denying Plaintiff medical care (*see id.*).

Subsequently, the Court sought to assign counsel to represent Plaintiff in this matter noting that discovery was more complex than anticipated due to the number of defendants and the fact that Plaintiff was transferred from an institution where at least some of the alleged actions took place. Accordingly, Attorney Robert H. Fredian was assigned as counsel for Plaintiff in this matter on January 8, 2016 (*see* Docs. 165 and 172). On January 28, 2016, Defendant Funk was dismissed without prejudice due to Plaintiff's failure to exhaust his administrative remedies as to his claim against this Defendant prior to filing his lawsuit (*see* Doc. 183). Recently, Defendants Atchison, Denning, Fasano, Godinez, Grubman, Harrington, Malley, O'Day, and Reynolds-Thompson were dismissed on motion by Plaintiff (*see* Docs. 234 and 245).

Following the parties' consent to the Magistrate Judge, this matter was referred, in its entirety, to the undersigned on September 12, 2016 and a new schedule was entered. In accordance with the Amended Scheduling Order, Defendants Coe, Shearing, Fuentes, Nwaobasi, Shepherd, and Wexford filed a motion for summary judgment (Doc. 223) that is now before the Court. Plaintiff, through counsel, filed his timely response objecting to Defendants' motion on

December 21, 2016 (Doc. 226). Defendants filed a reply that will be considered in accordance with the Court's January 30, 2017 Order (Doc. 239).

## FACTUAL BACKGROUND

Plaintiff's claims in this matter relate to medical treatment, or alleged lack thereof, for his inguinal hernia and lodged bullet fragments while Plaintiff was incarcerated at Menard Correctional Center ("Menard") and Lawrence Correctional Center ("Lawrence").

Plaintiff was transferred to Menard on June 11, 2011 and, soon after his arrival, it was noted that Plaintiff suffered from a left inguinal, reducible hernia (Plaintiff's Medical Records, Doc. 224-2, p. 2). Defendant Dr. Nwaobasi first examined Plaintiff's hernia on August 3, 2011, noting Plaintiff complained of pain related to his hernia (Deposition of Dr. Samuel Nwaobasi, Doc. 226-2, p. 17; *see* Doc. 224-2, p. 3). Following a physical examination of Plaintiff in the cell house, Defendant Nwaobasi assessed his hernia as being "partially reducible," meaning that although his hernia could be pushed in, it would come out again (Doc. 226-2, pp. 17, 19; *see* Doc. 224-2, p. 3). Defendant Nwaobasi did not address Plaintiff's pain issue during his examination, which, he admits, he should have done (Doc. 226-2, p. 18). Plaintiff was seen again by Defendant Nwaobasi on August 4, 2011 so that he could be examined in the healthcare unit (*id.* at p. 19). At this examination, Plaintiff indicated that his hernia was causing him pain in his groin down to his scrotum (Doc. 226-2, p. 20; Doc. 224-2, p. 4). Defendant Nwaobasi diagnosed Plaintiff with a reducible, left direct[1] inguinal hernia and advised Plaintiff to avoid strenuous exercises and activities (*id.*). Defendant Nwaobasi also prescribed Motrin for Plaintiff to take as needed and indicated he should be reassessed in six months (Doc. 226-2, p. 21; Doc. 224-2, p. 4).

---

[1] At his deposition, Defendant Nwaobasi testified that a direct hernia refers to a hernia where the bowel is pushing directly through the abdominal wall (*see* Doc. 226-2, p. 20).

Plaintiff was next seen for complaints of his hernia on November 3, 2011 by Dr. Krieg (who is not a defendant in this lawsuit) (Deposition of Dr. John Shepherd, Doc. 226-3, p. 15; *see also* Doc. 224-2, p. 5). Dr. Krieg noted Plaintiff had been complaining of his left inguinal hernia since 2009 (*id*.). Dr. Krieg assessed Plaintiff with a left inguinal hernia and indicated that his plan was to refer Plaintiff to a surgeon (Doc. 226-3, p. 16; Doc. 224-2, p. 5). In accordance with Dr. Krieg's plan, Defendant Dr. Shepherd presented Dr. Krieg's request for surgery in Collegial Review on November 10, 2011 (Doc. 226-3, p. 16; *see* Doc. 224-2, p. 7). During the Collegial Review (which is also synonymous with Utilization Management), Dr. Baker and Defendant Shepherd discussed Dr. Krieg's examination and it was determined that Plaintiff's hernia would be managed conservatively with activity restrictions and NSAIDs, and Defendant Shepherd would reassess Plaintiff in a "few months" and re-present his case if needed (Doc. 226-3, p. 16; Doc. 224-2, p. 7). Defendant Shepherd then examined Plaintiff on November 21, 2011, making an objective finding that the hernia was small and "easily reducible" (Doc. 226-3, p. 17; *see* Doc. 224-2, p. 8). Defendant Shepherd recommended Plaintiff take Motrin as needed and indicated Plaintiff should be reassessed in two months (*id.*).

Plaintiff was again examined by Defendant Shepherd on January 19, 2012 wherein it was noted that Plaintiff had a history of left inguinal hernia for three years (Doc. 226-3, p. 18; *see* Doc. 224-2, p. 9). After examining Plaintiff, Defendant Shepherd described Plaintiff's hernia as "nonscrotal" with "no incarceration, no strangulation" and recommended that Plaintiff not engage in any heavy lifting, weightlifting or excessive sports (*id.*). Defendant Shepherd prescribed Plaintiff 400 milligrams of Motrin to take as needed for pain; however, Defendant Shepherd testified that Plaintiff did not specifically complain about any pain or discomfort he was experiencing and Defendant Shepherd did not ask if Plaintiff was experiencing pain (*id*.).

Page **4** of **20**

Plaintiff was not examined by Defendant Shepherd after January 19, 2012.

The next time Plaintiff's hernia was assessed was on June 2, 2012 by Defendant Nwaobasi (Doc. 226-2, p. 22; *see* Doc. 224-2, p. 10).   Defendant Nwaobasi noted that Plaintiff's hernia was "reducible but tender" and issued Plaintiff a low bunk permit and reissued Plaintiff's prescription for Motrin (Doc. 226-2, p. 23; *see* Doc. 224-2, p. 10).   Defendant Nwaobasi never recommended Plaintiff for surgery as he only recommends surgery for patients whose hernia is incarcerated or strangulated (Doc. 226-2, pp. 23-24).   On August 27, 2012, Plaintiff was examined by a nurse practitioner for a follow-up appointment for his hernia (*see* Doc. 224-2, p. 11).   At this appointment, the nurse practitioner noted that Plaintiff's hernia was "small" and mildly tender with palpation (*id.*).   Plaintiff's Motrin was reordered and he was reeducated on the plan for conservative treatment (*id.*).   Plaintiff was seen by a physician, Defendant Dr. Fuentes, on October 19, 2012 at which time Plaintiff presented with a history of left hernia pain for the past four years (Deposition of Dr. Fe Fuentes, Doc. 226-4, p. 10; *see* Doc. 224-2, p. 12).   Defendant Fuentes examined Plaintiff, noting an objective finding of a reducible, left inguinal hernia (*id.*). Defendant Fuentes issued Plaintiff a prescription for 400 milligrams of Motrin three times a day as needed and indicated he should be reexamined in four months (*id.*).   Defendant Fuentes testified that she would not have prescribed Motrin "as needed" if Plaintiff described his pain as severe (Doc. 226-4, p. 10).   Defendant Fuentes did not review any of Plaintiff's medical records prior to examining him on October 19, 2012 (*id.* at p. 11).   Plaintiff saw Defendant Fuentes on one more occasion on January 15, 2013, at which time Defendant Fuentes again noted Plaintiff's subjective complaint of left inguinal hernia for four years with pain (Doc. 226-4, p. 11; *see* Doc. 224-2, p. 13). Defendant Fuentes conducted a physical examination and diagnosed Plaintiff with a "reducible left inguinal hernia," renewed Plaintiff's prescription for Motrin, and indicated he was to return as

necessary (*id.*). Defendant Fuentes testified that Plaintiff's hernia did not increase in size in the time between his October, 2012 and January, 2013 appointments; however, Defendant Fuentes never measured Plaintiff's hernia (Doc. 226-4, p. 13).

Plaintiff was not seen for complaints related to his hernia by any medical personnel at Menard between his appointment with Defendant Fuentes on January 15, 2013 and his transfer to Lawrence on April 24, 2013 (Deposition of Dr. John Coe, Doc. 226-5, p. 12; *see, generally*, Doc. 224-2). However, prior to his transfer to Lawrence, Plaintiff wrote two letters to the Medical Director at Menard, Defendant Dr. Shearing, complaining about the medical treatment for his hernia and lodged bullet fragments (*see* Docs. 226-10 and 226-11). Defendant Shearing only recalls receiving one letter written by Plaintiff dated February 20, 2013 (Deposition of Dr. Robert Shearing, Doc. 226-6, p. 8). In his February 20, 2013 letter, Plaintiff recites what he perceives as failures in the medical treatment he received at Menard for treatment of his inguinal hernia. Plaintiff specifically addresses the fact that he did not have a support belt and was only being provided Ibuprofen, which, he asserts, was not effective in treating his severe, constant pain (Doc. 226-11, p. 3). Plaintiff further explains that the staff was "fully aware of [his] condition and constant severe pain," but he could not get surgery because the State does not have any money (*id.* at p. 4). Plaintiff asks Defendant Shearing to use his authority and seek approval of surgery to treat his hernia (*id.*). Defendant Shearing responded to Plaintiff's letter on March 13, 2013 indicating that he reviewed Plaintiff's medical records and, with respect to Plaintiff's medical treatment for his inguinal hernia, Defendant Shearing writes that "[Plaintiff] ha[s] been examined many times and the hernia has always been reducible" and "[i]n the event the hernia becomes non-reducible in the future, surgery may be indicated. However, for now there is no medical necessity for surgery" (Doc. 226-12, p. 2).

It is undisputed that while at Menard Plaintiff received the following prescription orders for Motrin: August 4, 2011, Motrin 400 mg three times a day for two months, ordered by Defendant Dr. Nwaobasi; November 10, 2011, Motrin 400 mg three times a day for two months, as needed, ordered by Dr. Shepherd; January 19, 2012, Motrin 400 mg twice a day for two months, as needed, ordered by Dr. Shepherd; March 31, 2012, Motrin 400 mg four times a day for three months, as needed, ordered by a nurse practitioner; June 2, 2012, Motrin 400 mg three times a day for two months, ordered by Defendant Dr. Nwaobasi; August 27, 2012, Motrin 400 mg three times a day for two months, as needed, ordered by a nurse practitioner; October 19, 2012, Motrin 400 mg three times a day for four months, ordered by Defendant Dr. Fuentes; January 15, 2013, Motrin 400 mg three times a day for one month, ordered by Defendant Dr. Fuentes (*see* Affidavit of Robert Shearing, M.D., Doc. 224-8, pp. 1-2). It is further undisputed that Plaintiff was issued 400 mg tablets of Motrin, based on his requests for refills of his prescription, on the following dates in the following amounts: August 6, 2011 – 90 tablets; November 18, 2011 – 30 tablets; December 15, 2011 – 30 tablets; January 22, 2012 – 30 tablets; April 3, 2012 – 30 tablets; June 5, 2012 – 90 tablets; July 24, 2012 – 33 tablets; August 29, 2012 – 30 tablets; October 22, 2012 – 90 tablets; January 17, 2013 – 90 tablets (*see id.* at pp. 2-3).

As mentioned above, Plaintiff was transferred to Lawrence on April 24, 2013 (Doc. 226-5, p. 12; *see* Doc. 224-2, p. 17). Soon thereafter, on May 12, 2013, Plaintiff was seen by Dr. Butalid (who is not named as a defendant) regarding his left inguinal hernia and retained bullet fragments (Doc. 226-5, p. 14; Doc. 224-2, p. 18). Dr. Butalid described Plaintiff's hernia as reducible, advised Plaintiff to avoid lifting and straining, and ordered Tylenol as needed and a hernia belt for support (Doc. 226-5, p. 15; *see* Doc. 224-2, p. 18). Per Defendant Dr. Coe's orders, Plaintiff's hernia belt was ordered on May 14, 2013 (*see* Doc. 224-2, p. 19). Plaintiff was then examined by

Defendant Coe the following day (*see id.* at p. 20). Following an examination, Defendant Coe found that Plaintiff's left inguinal hernia was easily reducible, mildly tender, and came down to the external ring, indicating that the hernia was approximately three or four centimeters between the internal and external rings (Doc. 226-5, p. 16; *see* Doc. 224-2, p. 20). Defendant Coe prescribed Plaintiff stool softeners, but did not prescribe pain medication as Dr. Butalid had provided a prescription for pain medication a few days prior (Doc. 226-5, p. 16). Defendant Coe did not consider Plaintiff a surgical candidate on this date as his hernia was easily reducible and could be managed with a hernia belt (*id.*). On July 2, 2013, Plaintiff was issued a hernia belt (*see* Doc. 224-2, p. 21). Plaintiff's hernia was next evaluated on December 30, 2013 by Defendant Coe (Doc. 226-5, p. 17; *see* Doc. 224-2, p. 22). Defendant Coe noted that the hernia was reducible, but did not provide any additional directives concerning treatment or management for Plaintiff's hernia (*id.*).

Plaintiff's hernia was not examined again until December 11, 2014 when he presented at nurse sick call (*see* Doc. 224-2, pp. 23-32). Plaintiff testified that during this time he attempted to see a physician and submitted requests for medical care, but "nobody was doing anything," which Plaintiff attributed to an issue he was having with a correctional officer at that time (Doc. 226-1, pp. 17-18). When Plaintiff was able to visit the healthcare unit on December 11, 2014 for an assessment of his hernia, he noted his pain was at an "8" on scale of one to ten (*see* Doc. 224-2, p. 32). Plaintiff also indicated that the hernia belt was not helping (*id.*). Plaintiff was not referred to see Defendant Dr. Coe (*id.*). On December 16, 2014, a nurse practitioner performed a routine chart review of Plaintiff's medical record and renewed his permit for a hernia belt, ordered medication for constipation, and declined to renew Plaintiff's permit for a low bunk (Doc. 226-5, p. 20; *see* Doc. 224-2, p. 33). Plaintiff's hernia was not examined again until he was transferred to

Page **8** of **20**

Stateville on February 2, 2015 (Deposition of Dr. Saleh Obaisi, Doc. 226-7, p. 12). Dr. Obaisi, a physician at Stateville, examined Plaintiff on May 4, 2015 during which time Plaintiff complained of a left inguinal hernia that had been present since 2009 (*id.* at p. 13). Following a physical examination, Dr. Obaisi (who is not named as a defendant), diagnosed Plaintiff with an uncomplicated reducible left inguinal hernia and prescribed Plaintiff Motrin 400 milligrams twice a day for thirty days (*id.* at pp. 13-14). Despite his findings that the hernia was reducible and "uncomplicated," Dr. Obaisi referred Plaintiff for surgery based on his belief that Plaintiff may be released from prison soon and many inmates "don't either seek medical care or they don't know how to seek medical care," so he wanted to help him out so he can "go and work and start his life out there" (Doc. 226-7, p. 14). Surgery was approved and Plaintiff underwent surgical treatment for his hernia on September 1, 2015 (*id.* at p. 15).

At his deposition, Plaintiff testified that throughout the approximately five year period in which he was receiving medical treatment for his left inguinal hernia while incarcerated, his quality of life was greatly impacted as he was not able to sleep comfortably, having to hold onto his hernia to stop the throbbing and pain, and he had difficulty making a bowel movement (Doc. 226-1, p. 23). Moreover, Plaintiff indicated that he was constantly in pain that became progressively worse throughout the years (*id.*). Plaintiff testified that he complained of severe pain to each of his treating physicians (*id.*) and a review of Plaintiff's medical records indicates that complaints of pain were noted on August 3, 2011, August 4, 2011, November 3, 2011, January 12, 2012, August 27, 2012, October 19, 2012, December 25, 2013, December 28, 2013, December 11, 2014 (*see* Doc. 224-2, pp. 3-5, 9, 11-12, 22, 32). Also at his deposition, Plaintiff indicated that although he could walk and did so for his job as a laundry porter at Lawrence, he could not work out or do push-ups (Doc. 226-1, p. 24).

**LEGAL STANDARDS**

*Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). See also *Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir.2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir.2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). See also *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir.2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.2005) (other citations omitted).

*Eighth Amendment Deliberate Indifference*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first

that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the

inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

## DISCUSSION

Defendants Shepherd, Shearing, Nwaobasi, Fuentes, Coe, and Wexford ("the Wexford Defendants") do not deny that an inguinal hernia and retained bullet fragments may be objectively serious medical needs in certain circumstances; as such, they do not set forth an argument as to the objective requirement that Plaintiff's medical conditions are "serious." For clarity, the Court finds that Plaintiff's hernia was a serious medical condition in that it necessitated regular evaluation and treatment by medical professionals and caused Plaintiff severe pain and significantly affected his daily activities. *See Hayes*, 546 F.3d at 522-23. However, the Court does not find that Plaintiff's retained bullet fragments were a "serious medical need" within the bounds of the Eighth Amendment. Notably, at his deposition, Plaintiff explained that the bullet fragments sometimes felt numb and would itch a lot, but he never attributed the bullet fragments to constant or severe pain (Doc. 226-1, p. 16). Plaintiff's medical records also fail to evidence that he made any complaints to medical personnel that the retained bullet fragments were causing him chronic or severe pain (*see generally* Doc. 224-2). As such, the Court finds there is simply insufficient evidence in the record to establish that the retained bullet fragments constituted a serious medical need. Accordingly, insofar as Plaintiff's claim of deliberate indifference relates to the medical treatment, or lack thereof, for his retained bullet fragments, said claim is **DISMISSED WITH PRJEUDICE**.

Although Defendants apparently concede that Plaintiff's left inguinal hernia was, or could be, a serious medical condition, they contend that they were not deliberately indifferent to said condition, pointing to the totality of care Plaintiff received and arguing there is no evidence that

Defendants knew there was a serious risk to Plaintiff's health and consciously disregarded that risk so as to inflict cruel and unusual punishment on Plaintiff.  More specifically, Defendants assert that Plaintiff was not harmed as there is no evidence that he complained of severe pain and Plaintiff's hernia was regularly monitored and he was provided pain medication.  Defendants aver that conservative treatment was appropriate as Plaintiff's hernia was consistently assessed as reducible, non-incarcerated, and minimally symptomatic.  The Court considers said argument as it applies to each of the Wexford Defendants as set forth below.

### 1. *Dr. Samuel Nwaobasi*

Defendant Dr. Nwaobasi saw Plaintiff three times over a ten-month period: August 3, 2011, August 4, 2011, and June 2, 2012.  At both his August 3 and August 4, 2011 examinations, Plaintiff complained about the pain caused by his hernia.  Noting that Plaintiff's hernia was painful, but reducible, Defendant Nwaobasi advised Plaintiff to avoid strenuous exercise and prescribed him Motrin 400 milligrams for two months.  Approximately ten months later, Defendant Nwaobasi again assessed Plaintiff's hernia and prescribed a similar course of treatment, advising Plaintiff to avoid strenuous exercise and prescribing Motrin 400 milligrams.  Plaintiff asserts that he complained of severe pain to Defendant Nwaobasi, but to no avail, as he persisted in his conservative course of treatment.

While is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate."  *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)), this Circuit also recognizes that a doctor's persistence in a course of treatment known to be ineffective may violate the Eighth Amendment.  *Greeno*, 414 F.3d at 655 (finding that a genuine issue of material fact

existed as to whether a physician was deliberately indifferent to a prisoner's deteriorating medical condition by continuing to persist with a course of treatment that had been ineffective) *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"). The question here, then, is whether Defendant Nwaobasi's conservative course of treatment was within the boundaries of accepted standards or practices or whether it constituted an obdurate refusal to alter the course of said treatment over a ten-month period, causing Plaintiff to unnecessarily experience severe pain and discomfort. The Court finds that, when viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could conclude the latter. As such, Defendant Dr. Nwaobasi is not entitled to summary judgment on Plaintiff's claim of deliberate indifference.

### 2. Dr. John Shepherd

Defendant Dr. Shepherd examined Plaintiff on two occasions: November 21, 2011 and January 19, 2012. During his examinations, Defendant Shepherd determined Plaintiff's hernia was reducible with no incarceration or strangulation. Defendant Shepherd provided the same general course of treatment following both examinations, prescribing Motrin 400 milligrams and recommending that Plaintiff not engage in heavy lifting. Although Plaintiff's medical records do not specifically indicate that he complained about pain at these appointments, Plaintiff testified at his deposition that he complained of severe pain to each of his physicians, which would necessarily include Defendant Shepherd. The Court also notes that Defendant Shepherd's January 19, 2012 examination note indicated Plaintiff's hernia had been present for three years and, at his deposition, Defendant Shepherd testified that aside from reviewing a note on Plaintiff's medical records made by Dr. Krieg in November, 2011 indicating he would be referred to a surgeon, he did not review any of Plaintiff's prior records for complaints and treatment for his

inguinal hernia (Doc. 226-3, p. 15).

Again, with respect to Defendant Shepherd, the Court finds there is a question of fact as to whether this Defendant's prescribed course of conservative treatment was within the boundaries of accepted standards or practices or whether it constituted an obdurate refusal to alter said course of treatment, particularly because Plaintiff had clearly indicated his hernia had been present for three years.  As such, the Court finds that, when viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that Defendant Shepherd doggedly persisted in a course of treatment that was ineffective.

### 3. *Dr. Fe Fuentes*

Defendant Dr. Fuentes examined Plaintiff's hernia on two occasions: October 19, 2012 and January 15, 2013.  Defendant Fuentes noted that Plaintiff complained about pain during his two examinations and also noted that Plaintiff's hernia had been present for four years.  Finding that Plaintiff's hernia was reducible, Defendant Fuentes prescribed 400 milligrams of Motrin on both occasions.  Defendant Fuentes did not review any of Plaintiff's medical records prior to examining him.  Plaintiff asserts that he complained of severe pain to Defendant Fuentes, but to no avail, as this Defendant continued to provide the same conservative treatment he had been receiving.

The same question of fact that applies to the actions of Defendants Nwaobasi and Shepherd applies to Defendant Fuentes.  Specifically, there is a question of whether Defendant Fuentes' course of conservative treatment was within the boundaries of accepted standards or practices or whether it constituted an obdurate refusal to alter said course of treatment, especially in light of the fact that Plaintiff clearly indicated his hernia had been present for four years and was causing him severe pain.  Further, insofar as Defendant Fuentes (as well as the other Wexford Defendants),

rely on their prescription of Motrin to address Plaintiff's complaints of pain to absolve them from a finding a deliberate indifference, the Court finds said argument unavailing. As Plaintiff testified at his deposition, "[t]he pills weren't helping. They weren't doing nothing [*sic*]. I was getting the same results … getting over-the-counter medication [was] not helping" (Doc. 226-1, p. 18). As such, the Court finds that, when viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that Defendant Fuentes doggedly persisted in a course of treatment that was ineffective.

### 4. Dr. Robert Shearing

Defendant Dr. Shearing never examined Plaintiff; however, in his position as the Medical Director at Menard, Defendant Shearing received, and responded to, a letter written by Plaintiff complaining about his medical care. In his February 20, 2013 letter, Plaintiff recites what he perceives as failures in the medical treatment he received at Menard for treatment of his inguinal hernia. Plaintiff specifically addresses the fact that he does not have a support belt and is only being provided Ibuprofen, which is not effective in treating his severe, constant pain. Plaintiff asks Defendant Shearing to use his authority and seek approval of surgery to treat his hernia. Defendant Shearing responded to Plaintiff's letter on March 13, 2013 indicating that he reviewed Plaintiff's medical records and, with respect to Plaintiff's medical treatment for his inguinal hernia, Defendant Shearing writes that "[Plaintiff] ha[s] been examined many times and the hernia has always been reducible" and "[i]n the event the hernia becomes non-reducible in the future, surgery may be indicated. However, for now there is no medical necessity for surgery."

Although Defendant Shearing never examined Plaintiff, he obtained actual knowledge of Plaintiff's serious medical condition, and attendant complaints of severe, constant pain. Defendant Shearing reviewed Plaintiff's medical records and provided a response, as set forth

above.  Notably, however, Defendant Shearing failed to address Plaintiff's complaints regarding his pain and Plaintiff's assertion that he did not have a support belt.  These complaints were merely pushed aside, as Defendant Shearing simply noted that Plaintiff had been "examined many times" and there is "no medical necessity for surgery."  As Defendant Shearing wholly failed to address the specific complaints set forth in Plaintiff's letter, and merely "rubber stamped" the treatment regimen Plaintiff had been receiving for his hernia for the past eighteen months, there is an issue of fact as to whether Defendant's actions constituted an approval of unconstitutional treatment.  *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).  As such, summary judgment shall not be granted for Defendant Shearing.

### *5.  Dr. John Coe*

Defendant Coe examined Plaintiff's hernia on two occasions over a seven month period: May 15, 2013 and December 30, 2013.  At each examination, Defendant Coe determined that the hernia was reducible and, as such, generally continued with the conservative course of treatment that had been prescribed by medical personnel for the previous two years.  Defendant Coe, however, did provide Plaintiff with a prescription for a stool softener and ensured Plaintiff received a hernia belt.  Plaintiff avers that as with the other physicians named as Defendants in this action, he complained of severe pain to Defendant Coe, but to no avail as Defendant persisted in his conservative course of treatment to address Plaintiff's hernia and attendant pain.

Again, with respect to Defendant Coe, the Court finds there is a question of fact as to whether this Defendant's prescribed course of conservative treatment was within the boundaries of accepted standards or practices or whether it constituted an obdurate refusal to alter said course of treatment, particularly in light of the fact that at the time Defendant Coe first examined Plaintiff his medical records would have indicated his hernia had been present for approximately five years.

As such, the Court finds that, when viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that Defendant Coe doggedly persisted in a course of treatment that was ineffective.

### 6. *Wexford Health Sources, Inc.*

Plaintiff's deliberate indifference claim against Wexford is premised on its alleged policy or practice of refusing to approve surgical repairs for hernias unless it is incarcerated or strangulated, without regard for an inmate's pain or inhibition of daily activities.

As articulated by the Seventh Circuit, where a private corporation has contracted to provide essential government services, such as health care for prisoners, said private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Accordingly, in order for a plaintiff to recover from Wexford, he must offer evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy. *Id.* at 796. Also, a plaintiff pursuing a policy or practice claim must show that policymakers were aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009).

Defendant Wexford contends that it is entitled to judgment as a matter of law on Plaintiff's deliberate indifference claim as it has no cost-containment policy, protocol, or practice, either written or unwritten, directing that inmates with hernias be denied surgery. Moreover, according to the affidavit of Joe Ebbitt, the Director of Risk Management, HIPAA Compliance, and Legal

Affairs for Wexford, Wexford has no policy, protocol, or practice that determines medical treatment or medical decisions and it is Wexford's policy that physicians should order the treatment and/or medication they believe is necessary based on their medical judgment, following an assessment of the inmate's medical and physical condition (Affidavit of Joe Bennett, Doc. 224-11, ¶¶ 6-7). Defendant Wexford further points to the deposition testimony of the Defendant physicians wherein they indicated they used their medical judgment in determining whether patients required referral for surgery.

Plaintiff, however, asserts that Wexford has a policy of denying surgical intervention for inmates with reducible hernias and points to the deposition testimony of some of Plaintiff's treating physicians. Notably, at his deposition, Defendant Coe responded to Plaintiff's counsel's inquiry regarding the Wexford policy as it related to inguinal hernias and recommendation for surgery that "if the hernia was reducible, not particularly large, and you could manage it with a hernia belt, that a hernia surgery was not needed" (Doc. 226-5, p. 16). Defendant Shearing also indicated that Wexford had a policy that unless a hernia is strangulated or incarcerated it is not medically necessary to surgically repair it (Doc. 226-6, p. 11).

Based on the evidence set forth above, it is apparent that there is a genuine issue in dispute as to whether Wexford had a policy or practice directing their physicians that hernias should only be surgically repaired if they are strangulated or incarcerated, without regard to the pain the inmate is experiencing or the limitations on daily activities it may cause. Said issue is certainly material to Plaintiff's claim of deliberate indifference against Wexford and, if there was such a policy, it would certainly follow that Plaintiff's injury (i.e. enduring needless pain for approximately five years) could be attributed to said policy, which would be an obvious risk of denying surgical intervention for inmates who have hernias. For these reasons, the Court finds that Defendant

Wexford has failed to show it is entitled to judgment as a matter of law. Accordingly, Plaintiff's deliberate indifference claim against Defendant Wexford shall proceed.

### Qualified Immunity

In their motion for summary judgment, Defendants assert they are also entitled to dismissal on the basis of qualified immunity; however, their memorandum in support of their motion provides no argument regarding this issue. As such, the Court finds they have failed to adequately assert qualified immunity and summary judgment on said basis will not be awarded.

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants John Shepherd, M.D., Robert Shearing, M.D., Samuel Nwaobasi, M.D., Fe Fuentes, M.D., John Coe, M.D., and Wexford Health Sources, Inc. on November 21, 2016 (Doc. 223) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim of deliberate indifference related to the medical treatment for his retained bullet fragments is **DISMISSED WITH PREJUDICE**. Plaintiff shall proceed on his deliberate indifference claim against Defendants Coe, Wexford, Fuentes, Nwaobasi, Shearing, Shepherd, and Shicker for their failure to provide adequate medical care for his hernia, in violation of the Eighth Amendment.

**IT IS SO ORDERED.**

**DATED: February 21, 2017**

*Donald Wilkerson*

**DONALD G. WILKERSON**
**United States Magistrate Judge**